JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, Christopher Cyr ("husband"), appeals the trial court's order granting defendant, Dale Cyr ("wife")'s November 2002 motion for an increase in the amount he owes for child support for their three children, ages nine, eight, and two. The parties were divorced on August 31, 2001. They entered into an agreed parenting plan in which wife would maintain the home for the children for school purposes, but the parties would share all major decisions concerning the children. The court, pursuant to the recommendation of a psychiatrist, ordered wife to keep the children in the same schools until the end of the school year.
 {¶ 2} In the divorce decree, husband was ordered to pay $1,500 per month in child support ($500 per child). He was also ordered to pay spousal support as agreed upon by the parties in their separation agreement. This spousal support was structured on a reducing scale over a set period of time. It also included the mortgage payments for the period wife was ordered to keep the children in the same schools. Finally, husband was ordered to maintain health insurance for the children.
 {¶ 3} Husband had worked locally in the aircraft manufacturing field and had earned $165,000 per year. After September 11, 2001, however, the aircraft industry suffered significant losses. Consequently, husband was laid off from his job. He testified at the hearing that the only job he could find which would allow him to meet his support obligations was in rural England, specifically, working for Rolls Royce in their jet engine parts company.
 {¶ 4} He moved to England with his new wife and her daughter. His base pay within a few months of his hire in England was $179,000. His pay stub, however, reflected several other forms of compensation which significantly increased his actual take home pay. For example, he received a bonus from Rolls Royce, a Living Cost Differential, and Expatriate Premium, and a Hypothetical Tax. He argues that these other forms of compensation should not be used in calculating child support because they are "phantom income." Despite his lengthy explanation of why these are "phantom," he cites no law to support his claim that they are exempt from inclusion in his gross income.
 {¶ 5} Wife, meanwhile, had gotten a job as a bookkeeper in a local business. She earned $21,000 per year working part-time. Because the company was experiencing financial difficulties, however, she was laid off in April 2003.
 {¶ 6} The hearing on her November 2002 motion for an increase in child support was not heard until June of 2003, in part because husband was not available until then. The court found at the hearing that, as of that date, wife's gross income was $9,600 from unemployment benefits. It found that husband's gross income was $221,544.49. The court then found that, according to the statutory guidelines, combining those figures for a joint gross income calculation resulted in a child support payment of $1,724.55 per month, or, including poundage, $574.85 per child per month. Because the parents' combined incomes exceed $150,000, however, the court had the discretion to determine the amount of the support obligation on a case-by-case basis.
 {¶ 7} The court ordered an increase in child support from $1,500 per month to $2,400 per month, or $800 per child per month, retroactive to November 2002, to be deducted from husband's pay. The court also ordered deductions from his pay for "spousal support of $3,000 per month pursuant to the language in the divorce decree * * *." Judgment entry January 29, 2004.
 {¶ 8} Husband states nine assignments of error. The first two address the same issue and will be considered together:
The trial court erred and abused its discretion in failing to undertake a thorough and independent review of the magistrate's decision when it adopted the decision of the trial court.
The trial court erred and abused its discretion in ignoring the additional evidence submitted in chris' [sic] objections to the magistrate's decision.
 {¶ 9} Husband argues that the trial court failed to conduct a de novo review of the case. He claims that instead of reviewing the evidence and the magistrate's conclusions of law, the court "rubber-stamped" it.
 {¶ 10} A magistrate's authority is conferred by Civ.R. 53. Although the rule allows the court to give a magistrate a significant range of authority,
 {¶ 11} Civ.R. 53 places upon the court the ultimate authority and responsibility over the referee's findings and rulings. The court must undertake an independent review of the referee's report to determine any errors. Civ.R. 53(E)(5); Normandy Place Assoc. v. Beyer (1982),2 Ohio St.3d 102, 2 OBR 653, 443 N.E.2d 161, paragraph two of the syllabus. Civ.R. 53(E)(5) allows a party to object to a referee's report, but the filing of a particular objection is not a prerequisite to a trial or appellate court's finding of error in the report. Id., paragraph one of the syllabus. The findings of fact, conclusions of law, and other rulings of a referee before and during trial are all subject to the independent review of the trial judge. Thus, a referee's oversight of an issue or issues, even an entire trial, is not a substitute for the judicial functions but only an aid to them. A trial judge who fails to undertake a thorough independent review of the referee's report violates the letter and spirit of Civ.R. 53, and we caution against the practice of adopting referee's reports as a matter of course, especially where a referee has presided over an entire trial.
 {¶ 12} Hartt v. Munobe (1993), 67 Ohio St.3d 3, 6.
 {¶ 13} As proof of the court's failure to review the report, husband alleges that the court failed to correct mathematical mistakes found in the magistrate's report. He does not, however, specify what those mistakes are or where they occur. A reviewing court need not search the record for an error alleged. App.R. 12(A)(1)(b)(2).[1]
 {¶ 14} Husband has failed to demonstrate that the trial court did not review the evidence, the magistrate's report, and his objections to the magistrate's report, prior to entering its judgment.
 {¶ 15} Husband also argues that the court either ignored or failed to address the additional evidence he provided with his affidavit. He points out in the affidavit that wife knew at the time of the hearing that she and the children were relocating in a month to California to live with her parents and that one of the children told him wife had ordered the children not to tell him about the planned move. As stated in Evid.R. 801(C), hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Husband's recounting the child's statement to show that wife knew she intended to move at the time of the hearing, therefore, is inadmissible hearsay. The court properly ignored such inadmissible statements.
 {¶ 16} Husband also challenges the magistrate's conclusion that because husband was in England, wife incurred greater expense by having the children at all times, instead of shared parenting as had been agreed upon in the separation agreement. The magistrate also had observed that wife would incur child care expenses when she found employment. In his affidavit, however, husband argues that when wife was living with her parents in California, her mother would provide significant child care, and wife would not have the expense of a mortgage. Husband argued in his objections to the report, therefore, that the child support calculations were based on circumstances which changed immediately after the hearing.
 {¶ 17} All the information presented in husband's affidavit about the wife's changed circumstances is inadmissible hearsay, however, and the evidence he attaches to it is not authenticated. Because the information husband provided after the hearing was not admissible, the court did not err in ignoring it. Husband's counsel did not inquire on cross-examination about wife's future plans. The magistrate could not have known at the time he wrote the report, therefore, about wife's plan to change her circumstances. It is proper to bring to the court's attention the substantial change in circumstance resulting from wife's preplanned relocation to California shortly after the hearing. An objection to a magistrate's report, however, is not the proper vehicle for doing so.[2]
 {¶ 18} We find that the trial court did not abuse its discretion in its review of either the Magistrate's Decision or the husband's affidavit. Accordingly, this assignment of error is overruled.
 {¶ 19} For his third assignment of error, husband states:
 {¶ 20} The trial court erred by deviating upward from the child support guideline amount by $900 per month based on Dale's self serving and false assertion that she had been left to raise the children alone due to chris' [sic] relocation to england.
 {¶ 21} Husband argues that the amount of child support the court ordered was excessive because its determination relied on circumstances due to change drastically in the near future. The original motion for modification, however, was filed over nine months before the hearing. The circumstances wife relayed at the hearing had been true in the time frame between the filing of the motion and the date of the hearing. The court certainly did not err in relying on this testimony in its ruling.
 {¶ 22} Husband did not provide evidence of those changed circumstances.[3] Husband's December 15, 2003 motion to modify child support is still pending before the trial court. Husband can, therefore, present the information concerning changed circumstances to the court when the hearing is scheduled on that motion. As it did with the order which is the subject of this appeal, the court may make any decision on that motion retroactive. The trial court, and not the appellate court, is the proper forum for that issue. Accordingly, this assignment of error is overruled.
 {¶ 23} For his fourth assignment of error, husband states:
 {¶ 24} The trial court erred in adopting the magistrate's finding that a substantial change of circumstances existed which justified a modification of child support.
 {¶ 25} Husband claims that the trial court erred in calculating his annual gross income. First, he alleges that the court miscalculated his bonus by multiplying the bonus by three, as though it were received in each pay rather than in only one pay as a lump sum. Instead, he argues, the $21,000 bonus should be averaged over three years, resulting in an average of $7,000.
 {¶ 26} The court, however, did not multiply; rather, it divided his previous year's bonus by three and allocated only one-third of it to the coming year, just as husband said should have occurred.[4] Husband submitted four proposed worksheets delineating the parents' incomes. On the worksheet which included his bonus, husband listed his expected bonus as $7,222.33. The court listed the bonus on its worksheet as $7,000. The only difference is a result of the court rounding off the actual three-year bonus of $21,667.00 to $21,000 to the benefit of husband.
 {¶ 27} Husband's next objection concerns what he calls the "phantom income" the court said he receives from his company for working overseas. He objects to the court's finding he received income in addition to his base salary of $179,000.
 {¶ 28} According to a memo titled "International Assignment Compensation," husband received a "living-cost-differential" designed to "enable employees to maintain a lifestyle which is broadly comparable to that in their home country, taking account of differences in cost-of-living, taxation and social security." The memo further explains that "[a] living-cost-differential (LCD) is paid in order to protect the purchasing power of the employee's income in the host location." Plaintiff's Exhibit 2. This LCD is tied to the exchange rate between the two countries' currencies and reassessed every six months.
 {¶ 29} Another benefit the court included and husband believes is "phantom income" is the "Expatriate Premium." The purpose of this premium is "to recognize the disruption an employee, and their [sic] accompanying family, experience as a result of an international assignment, and as a contribution to costs not addressed elsewhere." It "is calculated as a percentage of current home country base salary (gross) * * *." Exhibit No. 2.
 {¶ 30} Finally, husband objects that the "Hypothetical Tax" is also "phantom income." This is actually a deduction taken from the employee's check, similar to the withholding taken from an American company's paycheck, to cover taxes incurred by the employee in both his home country as well as the host country. The company pays this tax directly to the taxing government. Therefore, although the employee never receives it, it is still gross income to the employee. The memo explains that it "attempts to minimize financial losses and gains and should result in employees paying broadly no more or less tax than they would have paid on their Company paid income and benefits, had they remained in their home country. A hypothetical home country tax deduction is therefore made from the home country base salary. All host country tax (and home country tax where applicable) arising from Company sourced income will be met by the Company." Memo. Exhibit No. 2.
 {¶ 31} Husband claims that these payments and deductions are not part of his gross pay because they exist only to equalize his pay to what he would receive for the same work in the U.S. He fails, however, to cite any law to support his claim they are not part of his gross pay.
 {¶ 32} R.C. 3119.01(C)(7) defines "gross income":
 {¶ 33} "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from allsources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source. (Emphasis added.)
 {¶ 34} The statute lists various sources of income to be included. It does not limit sources of income to the types listed.
Although the purpose of the extra payments husband received over and above his base salary was to equalize husband's salary to its net worth in the U.S., they still qualify as income received. Because the court was without authority to exclude any of husband's gross income as he requested, the court did not err in what income it selected as a basis to determine how much the child support amount exceeded the guidelines.[5]
We understand that this extra income was intended to make his pay substantially equivalent in his host country to what it would be in his home country. Nonetheless, there is no statutory allowance for exempting this income from his gross income for child support calculations. The court determined here that wife's circumstances merited an award above the statutory amount.
 {¶ 35} Accordingly, this assignment of error is overruled.
 {¶ 36} For his fifth assignment of error, husband states:
 {¶ 37} The trial court erred and abused its discretion in calculating dale's income and earning capacity and the parties' combined gross incomes, particularly with regard to ordering the monthly increase in the child support obligation retroactive to november 8, 2002, even though dale was employed during much of the retroactive period.
 {¶ 38} We first note that on page four of his Decision, the magistrate stated that, pursuant to the worksheet, the relative gross income of husband was $224,544.00 and that wife's was $45,000.00; and their combined gross income equaled $270,144.00. We compute $224,544.00 plus $45,000 to equal $269,544, not $270,144.00 as stated in the Magistrate's Decision.[6] Clearly the Decision contains a mathematical error.
 {¶ 39} Husband also alleged that the court erred in the percentage of child support it determined he owed.[7] We agree. The Magistrate's Decision, which the court adopted in its entirety, held that "commencing November 8, 2002, [husband]'s monthly child support obligation is $2,400.00 per month * * *." At 5. Husband argues that in determining the amount he owed for retroactive support, the magistrate failed to consider wife's earned income.
 {¶ 40} Wife was employed for five months of the time from the filing of the motion to modify in November 2002 to the hearing in June 2003. Despite this period of employment, husband claims, the magistrate based his calculation of retroactive support on wife's income at the time of the hearing. Thus the magistrate included only her income from unemployment, not the salary she drew until May 12, 2003.
 {¶ 41} The magistrate's stated reasons for making the support figure retroactive were that
 {¶ 42} [wife] showed at trial that she has overcome the rebuttable presumption that the actual amount of child support due through the line establishing the annual obligation in the worksheet is the correct amount by showing that she has the minor children the majority of the time (more than contemplated at the time of the divorce); their needs have increased as they grow [sic]; receiving no help from [husband] in rearing the minor children other than through child support; and [sic] by showing that there is no family nearby that can assist her in raising the minor children.
 {¶ 43} Magistrate's Decision at 5. It appears, therefore, that in determining the amount of child support needed, the Magistrate relied more on the wife's increased needs resulting from husband's absence from the country than he did on the parties' relative incomes. He did, nonetheless, miscalculate the amount of retroactive support due to wife when he failed to include her earned income in calculating the amount of retroactive support due.
 {¶ 44} The magistrate also failed to attribute what husband paid in spousal support to wife's income. On page three of his worksheet the magistrate stated: "[Wife]'s gross income is $9,600 which is derived from the unemployment benefits she is receiving." By attributing only the $9,600 she received from unemployment, the magistrate failed to include the $36,000 in spousal support wife received. If only unemployment income and spousal support were considered, wife's income would be $45,600. Wife would, therefore, be responsible for a larger percentage of the child support from the combined incomes, even without addressing the income she earned prior to her layoff.
 {¶ 45} On his worksheet, the magistrate began with husband's annual gross income as $221,544. After deducting for spousal support, the magistrate arrived at an income of $188,544.00. Less husband's local taxes, husband's income equals $184,053.12 for the purposes of computing child support.
 {¶ 46} The magistrate erred in calculating the amount of child support owed by husband for three reasons: because the magistrate considered only wife's unemployment income in determining the amount of child support due from husband, because he omitted both her spousal support as well as the income she had received for her employment, and because he calculated the income from the unemployment benefits back to a time that included a period in which she was employed.
 {¶ 47} When the trial court errs in its calculations of child support, as it did in calculating the relative incomes of the parents for the period from November 2002 to April 2003, the case must be reversed and remanded for correction of the errors. Rains v. Rains, Cuyahoga App. No. 79537, 2002-Ohio-654; McNally v. McNally (April 6, 2004), Summit App. No. 16255. Although the court was within its discretion in determining a fair amount for child support, it erred when it made that amount retroactive without first properly calculating the relative incomes of the parties for the retroactive period. It also erred in its inconsistent calculations of the relative income of the parties in the judgment entry and worksheet, as we discussed earlier in this assignment of error.[8]
 {¶ 48} Accordingly, this assignment of error has merit and the case is reversed and remanded to correct the retroactive income attributed to mother, to include spousal support under mother's income, and to correct the mathematical errors in the judgment entry.
 {¶ 49} For his sixth assignment of error, husband states:
 {¶ 50} Even assuming a substantial change of circumstances justifying a modification of child support, the trial court erred and abused its discretion in deviating and extrapolating above the guideline amount.
 {¶ 51} Husband argues, in part, that the court erred by applying the former version of the support statute rather than the revised version. To address this issue, we must review the former version of the statute and subsequent changes.[9]
 {¶ 52} High income refers to a combined parental income above $150,000, which is the figure at which the guideline table ends. Computing child support in cases in which the combined income of the parents is between $6,000 and $150,000, on the other hand, is less complicated because the legislature provided numerical Guidelines to the court for parties whose incomes were within that range. The trial court is, in those cases, able to consult R.C. 3119.021, which contains the Guidelines for child support based upon the income of the parents and the number of children. The court is required to award the amount of support designated in the guideline unless it finds that the amount in the Guidelines would be unjust or inappropriate and would not be in the best interest of the child or children. If the court makes this determination in a case which falls within the Guidelines, it must provide its reasons for deviating from that amount. A list of reasons for deviating is found in R.C. 3119.22.
 {¶ 53} The calculations for families when the parents' combined income exceeds $150,000, on the other hand, were not previously and still are not available in a statute. Prior to the revision R.C. 3113.215,[10]
the statute for high income parents, the court was required to "extrapolate" the amount of support. That is, the court used the same fixed percentage of income used in the Guidelines at the $150,000 level for each number of children to calculate the amount of support for incomes above the Guidelines. In other words, if the guideline percentage for two children at $150,000 was 14.6% of the combined incomes be allocated as child support for incomes falling within the Guidelines, then the court had to apply the same 14.6% to the combined incomes above $150,000 in a case with two children. There was a rebuttable presumption that the percentage applied resulted in the correct amount of child support. The court was free to award more or less than the extrapolated amount, but it had to provide its reasons for deviating from the extrapolated amount as dictated in the former version of R.C 3119.22. In deviating above or below the extrapolated amount, the court was to consider the standard of living of the family and determine the amount on a case-by-case basis. Although these requirements are still in place for parents whose incomes fall within the Guidelines, they no longer apply to parents whose combined incomes exceed $150,000.
 {¶ 54}
The revised statute for combined incomes above $150,000, R.C. 3119.04
(B),[11] eliminated the requirement that the court extrapolate to determine the appropriate amount of child support when the parents' incomes exceeded $150,000. Instead, the statute leaves the determination entirely to the court's discretion,unless the court awards less than the amount of child support listed for combined incomes of $150,000. In terse language, the statute further says that when the court awards less than that amount it is required to "enter in the journal the figure, determination, and findings." R.C. 3119.04(B). Previously, that requirement applied to all awards of child support including those above $150,000. Under the revised statute the requirement applies only to awards that are less than $150,000. However, in making its determination, the court is required to "consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." Id.
 {¶ 55} Husband relies on Rex v. Rex, Cuyahoga App. No. 82864, 2004-Ohio-997 to support his assertion that the court was required to provide its determination and findings in its award of child support. We believe that Rex overstated what was required by statute and hold that the specific determinations and findings Rex discussed, while helpful to a reviewing court, are mandated only in cases in which the amount awarded is below the amount contained in the Guidelines for incomes of $150,000.
 {¶ 56} Husband argues that the court erred in extrapolating the amount of child support according to the previous version of the statute. Nothing in the new version of the statute, however, prohibits the court from using this method to determine the amount of support due in high income cases; it merely no longer mandates that the court use this method. Moreover, the statute does not require any explanation of its decision unless it awards less than the amount awarded for combined incomes of $150,000. The trial court would not have erred, therefore, if it used the extrapolation method to determine the amount of child support due.
 {¶ 57} Husband also argues that the court erred by deviating above the extrapolated amount. As our analysis of the revised version of the statute shows, the court had discretion to award any amount above the Guidelines amount for a combined income of $150,000. Any amount awarded above this baseline amount is not considered a deviation. Because there is no Guidelines figure or extrapolated figure required, there can be no deviation in the award.
 {¶ 58} Accordingly, this assignment of error is without merit.
 {¶ 59} For his seventh assignment of error, husband states:
 {¶ 60} The trial court erred and abused its discretion in denying Chris' [sic] motion to dismiss.
 {¶ 61} Husband filed a motion to dismiss when wife failed to provide discovery by the deadline the court ordered. The Magistrate's Decision stated that because the deadline for discovery was June 20th, husband should have filed his motion on June 21st or "shortly thereafter." June 21st was a Saturday, so husband could not have filed his motion before Monday June 23rd. The court noted, however, that it was filed on June 24th, the second day on which it could have been filed.
 {¶ 62} The magistrate further complained that the motion was not filed until three days before the June 27th hearing.[12] The magistrate decided that because the hearing had been scheduled to accommodate husband's presence in the country, the hearing would go forward.
 {¶ 63} The Ohio Supreme Court has explained the standard we use to review such a decision:
The discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. A reviewing court's responsibility is merely to review these rulings for an abuse of discretion. "`The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" Statev. Jenkins (1984), 15 Ohio St.3d 164, 222, 15 Ohio B. Rep. 311, 361,473 N.E.2d 264, 313, quoting Spalding v. Spalding (1959), 355 Mich. 382,384-385, 94 N.W.2d 810, 811-812. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
 {¶ 64} Nakoff v. Fairview General Hospital (1996), 75 Ohio St.3d 254,256.
 {¶ 65} The Magistrate's Decision clearly states that although he warned that sanctions might result from failure to comply with discovery and although not all discovery was completed by the hearing date, wife had "explained at the hearing that due to summer activities, she did try, along with her attorney, to get what materials she could find to satisfy [husband]'s request for discovery. In no way, she explained, that [sic] the lack of getting materials for discovery in a timely fashion was done intentionally or to hide information away from [husband] and his attorney." Magistrate's Decision at 5.[13] Moreover, the magistrate then noted that "[m]ost if not all of the information for discovery purposes was made available shortly before or right at trial." Magistrate's Decision at 6.
 {¶ 66} Husband alleges that receiving discovery from wife on such short notice prejudiced his ability to prepare for the hearing because if he had had access to her financial records, he could have discovered her imminent move to California. Although husband may be correct, such a conclusion is speculative. The court could properly consider that most of the discovery had been provided, that prejudice to husband was not demonstrated, that because of husband's schedule the court had waited over six months for a hearing on this issue, and that any sanctions would have delayed resolution of the hearing even longer. We cannot say that the trial court abused its discretion in permitting the hearing to go forward despite the tardy discovery, particularly in light of the very restricted schedule of husband: husband would not be available for a subsequent hearing because he was only in the United States for a short visit. We are not free to substitute our judgment for that of the trial court absent any abuse of discretion, and we find no such abuse here.
 {¶ 67} Accordingly, this assignment of error is without merit.
 {¶ 68} For his eighth assignment of error, husband states:
 {¶ 69} The trial court erred and abused its discretion in granting dale's motion for attorney fees and denying Chris' [sic] motion for attorney fees.
 {¶ 70} Both husband and wife requested attorney fees from the other. The trial court denied husband's request and granted wife's. It is well established "that an award of attorney fees is within the sound discretion of the trial court. * * * This trial court's discretion will not be overruled absent an attitude that is unreasonable, arbitrary or unconscionable." Rand v. Rand (1985), 18 Ohio St. 3d 356, 359, citations omitted.
 {¶ 71} Husband argued that he still has not been able to pay the attorney fees he incurred in the divorce proceedings and certainly cannot pay the ones incurred in the current action. He also cited the higher cost of living in England, his financial obligations under the decree, and his transportation costs for visiting the children. He argued that wife has more cash on hand to pay fees than he has and that he will be prevented from fully litigating his rights if he is not awarded fees.
 {¶ 72} Because the magistrate's award of attorney fees was based on erroneous figures, as discussed above under Assignment of Error V, however, we vacate this award and instruct the court to address the issue of attorney fees in light of the corrected income amounts. Husband will have the opportunity at that time to present his arguments concerning his ability or inability to pay his own attorney fees. Accordingly, this assignment of error has merit.
 {¶ 73} For his ninth assignment of error, husband states:
 {¶ 74} The trial court erred and abused its discretion in ordering spousal support to continue at a rate $500 per month higher, commencing September 1, 2003, than as set forth in the judgment entry of divorce.
 {¶ 75} Husband argues that the trial court erred in modifying the amount of spousal support when it ordered the following in its judgment entry:
 {¶ 76} A wage withholding notice shall issue upon [husband]'s income source * * * in the amount of $5,508.00 per month, which includes 2% processing charge. This monthly amount also includes spousal support of $3,000.00 per month pursuant to the language in the divorce decree ($2,400.00 + $3,000 = $5,400.00 + 2% = $5,508.00). (Emphasis in original.)
 {¶ 77} Judgment entry January 29, 2004, at 2. The language of this journal entry would appear to indicate that the spousal support amount would remain at $3,000.00. This order, however, reaffirmed the original settlement agreement, when the court said that "[a]ny subsequent modification of the support order with respect to spousal support shall be followed in accordance with the provisions outlined in the divorce decree in conjunction with the new child support amount." Judgment entry January 29, 2004, at 2. Thus there is a conflict between the $3,000 specified in the January 29, 2004 order and its reaffirmation of the original agreement that provided for a reduction to $2,500 from September 1, 2003 through February 5, 2005.[14]
 {¶ 78} The trial court is ordered to resolve this difference and to ensure that CSEA is deducting the correct amount of spousal support, ($2,500 between September 1, 2003 and February 5, 2005, when it ends), as stated in the agreed judgment entry, and to credit husband with any amount collected over and above the amount specified in the agreement. Accordingly, this assignment of error has merit.
 {¶ 79} Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 {¶ 80} Affirmed in part, reversed in part, and remanded to correct the court's determination of wife's income and attorney's fees and to correct other mathematical errors contained in the Judgment Entry.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Dyke, J., concur.
[1] We note, however, that husband is correct and the magistrate's decision does contain mathematical errors, which we address under Assignment of Error V.
[2] To report the anticipated change, husband could have moved to reopen the hearing for further evidence, filed a Civ.R. 60(B) motion alleging fraud, and/or filed a new motion to modify.
[3] As we explained earlier, husband's affidavit in support of his claim consists primarily of hearsay and speculation.
[4] Allocating the bonus over three years is statutorily mandated. However, husband could receive another bonus for the next two years, especially since he is in an industry that the record shows routinely pays its workers bonuses. Any projection of income is necessarily speculative and could be modified later.
[5] We note other non-monetary benefits husband received that the court did not include under income. Rolls Royce was providing husband with a company car and a home, rent free. The magistrate found, and the evidence supports, that this house was equivalent to the home wife was living in at the time of the hearing. The company also provided him with gas and a car for his business use, although husband had to provide his new wife with a car and had to pay the lease and insurance on a car he had in the U.S. because he could not sublease it. Rolls Royce also provided him with nine round trip tickets back to the U.S. per year. Even though he still had to pay for a number of airline tickets to visit his children and to bring them back to England for seven weeks each summer, the tickets provided by his employer constitute income not factored into the court's decision. Husband benefitted from the court's decision to exclude these items, which the court had the discretion to list under income.
[6] The magistrate's worksheet reflects the correct mathematics.
[7] After determining the combined income of the parties, the court determines the percentage each party contributes to that combined income. That same percentage is used to determine what portion of child support each party is responsible for. So if one party makes 60% of the combined income, that party would be responsible for 60% of the total amount of child support due.
[8] See footnote 6.
[9] "Since the inception of child support guidelines, computing child support in high income cases has been problematic." Domestic Relations Journal of Ohio, May/June 2004, Vol. 16, Issue 3, Determining ChildSupport Where the Parties' Combined Income Is over $150,000: or Where theMaximum Is Really the Minimum, Diane M. Palos, Magistrate, Cuyahoga County Division of Domestic Relations.
[10] The prior version reads:
"(2) In determining the amount of child support to be paid under any child support order, the court, upon its own recommendation or upon the recommendation of the child support enforcement agency, shall or the child support enforcement agency, pursuant to sections 3111.20, 3111.211
[3111.21.1], and 3111.22 of the Revised Code, shall do all of the following:
* * *
(b) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court or agency shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. When the court or agency determines the amount of the obligor's child support obligation for parents with a combined gross income greater than one hundred fifty thousand dollars, the court or agency shall compute a basic combined child support obligation that is noless than the same percentage of the parents' combined annual income thatwould have been computed under the basic child support schedule and under the applicable worksheet in division (E) of this section, through line 24, or in division (F) of this section, through line 23, for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount and enters in the journal the figure, determination, and findings." R.C. 3113.215(B)(2)(b), emphasis added.
[11] The revised statute reads: "If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than theobligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of onehundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If thecourt or agency makes such a determination, it shall enter in the journalthe figure, determination, and findings." R.C. 3119.04(B), effective 3-22-2001, emphasis added.
[12] We note that husband had no control over the time frame allotted between the discovery deadline and the hearing.
[13] Wife testified at the hearing that she had been in San Diego visiting her parents between June 6th and June 23rd, and so had not been able to respond to husband's discovery requests. The docket reflects that husband's request for production of documents was served on wife at the end of March of the same year. Wife did not explain the delay between March and June 6th.
[14] The court's retroactive judgment entry was not filed until January 29, 2004, after the spousal support should have decreased to $2,500.00.