[Cite as *Moore v. Moore*, 182 Ohio App.3d 708, 2009-Ohio-2434.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY


MOORE,

     APPELLANT,                                        CASE NO. 14-08-46

     v.

MOORE,                                                              O P I N I O N

     APPELLEE.


**Appeal from Union County Common Pleas Court**
**Domestic Relations Division**
**Trial Court No. 2000-DR-0219**

**Judgment Reversed and Cause Remanded**

**Date of Decision:     May 26, 2009**


**APPEARANCES:**

     **Jeffrey A. Merklin,** for appellant.

     **Frederick B. Johnson,** for appellee.

**ROGERS, Judge.**

**{¶1}** Plaintiff-appellant, Stacia A. Moore, appeals the judgment of the Union County Court of Common Pleas, Domestic Relations Division, ordering defendant-appellee, Kelvin Moore,[1] to pay child support for the parties' minor child. On appeal, Stacia contends that the trial court erred in calculating the amount of child support by failing to allow her to present evidence regarding the family's standard of living and by "capping" the child support at the $150,000 maximum guideline support level. Based upon the following, we reverse the judgment of the trial court.

**{¶2}** Stacia and Kelvin married in 1987, and three children were born of the marriage: Laura (born June 29, 1988), Kalie (born June 12, 1990), and McKenzie (born on October 16, 1992). In February 2001, the parties terminated their marriage and began operating under a shared-parenting plan.

**{¶3}** In August 2006, Stacia filed a motion to terminate the shared-parenting plan on the basis that Kalie was living exclusively with her, that Laura had become emancipated, and that Kelvin had made a commitment to move from Union County to Indiana.

**{¶4}** In December 2006, the parties reached a mediated agreement whereby the shared-parenting plan would continue with regard to McKenzie until

---

[1] We note that defendant-appellee, Kelvin Moore, did not file an appellate brief.

Kelvin moved to Indiana, at which time it would terminate and Kelvin would pay child support for McKenzie and Kalie in the amount of $852.48 per month.

{¶5} In May 2008, the Union County Child Support Enforcement Agency ("CSEA") filed an administrative adjustment recommendation, ordering that Kelvin's amount of monthly child support increase from $852.48 to $896.35. Shortly thereafter, Stacia requested a mistake-of-fact hearing in response to the administrative review. At the mistake-of-fact hearing, the CSEA denied Stacia's objections, and she subsequently filed a request for a court hearing on the matter.

{¶6} In June 2008, the CSEA ordered that Kelvin's amount of monthly child support be decreased to $426.24 because Kalie had become emancipated.

{¶7} In August 2008, the case proceeded to a court hearing before a magistrate on the issue of Stacia's opposition to the CSEA's May 2008 administrative adjustment recommendation, at which the following transpired.

{¶8} Initially, the trial court established that Kelvin's annual gross income was $115,818 and that Stacia's annual gross income was $107,648.40. Thereafter, Stacia's counsel attempted to question Kelvin about his reduced expenditures associated with his children since his move to Indiana, as he no longer spent as much time with them. However, the trial court refused to permit any testimony on this matter, stating, "[W]hat I will need to hear testimony on is, what specific needs does the remaining child have which would necessitate the court going over

using $150,000 as the combined income for both parties?" and "what I need to hear from your client is what extra expenses does she have, what is the child involved in * * * that she needs money for." Additionally, Stacia's counsel attempted to present testimony about the lifestyle of the entire family prior to Kelvin's move to Indiana and the emancipation of Laura and Kalie; however, the trial court refused to consider any testimony involving the family as a whole or the standard of living enjoyed by Laura and Kalie prior to their emancipation. Stacia's counsel strenuously objected to this limitation on testimony, stating that it prevented him from presenting evidence about McKenzie's and the parties' standard of living.

{¶9} Thereafter, the trial court began questioning Stacia about specific, extraordinary, recent expenses she had incurred for McKenzie's benefit. In response to the trial court's questioning, Stacia testified that McKenzie would turn 16 years old in the next month; that she was currently taking driving courses costing $125 or $425; that McKenzie participated in an athletic league that would have cost $350, but she had become injured, so she did not have to pay; and that she had incurred other fees, including a yearbook for $42, school fees of $85, school supplies of $250, $1,800 for school lunches, $120 to attend school functions, $900 for a choir trip to New York, $511 for a vacation to Florida,

approximately $500 for each school dance, $100 for athletic attire, and $84 for school pictures.

{¶10} Thereafter, the magistrate issued her decision, finding that:

> When she was asked by the Court what she wanted in the amount of child support for the party's [sic] remaining unemancipated child, McKenzie, [Stacia] stated that she wanted $17,000 a year plus [Kelvin] to pay one half of all of McKenzie's expenses, including car, car insurance, trips, hair cuts, tanning, prom dresses, etc.

> * * *

> [Stacia] makes all the decisions as to what activities McKenize [sic] should take part in such as athletic activities, trips, etc. [Kelvin] does not have any input. It was [Stacia's] decision to provide McKenize [sic] with a lifestyle that results in [Stacia] purchasing $200-$300 prom dresses several times a year for her daughter. This with accessories results in [Stacia] spending approximately $500 per prom on McKenize [sic]. McKenzie attends several of these functions per year.

> The Court finds that using a combined annual gross income of $150,000 (which results in a monthly child support obligation for [Kelvin] in the amount of $674.44 which includes the 2% processing charge) is not unjust or inappropriate and would not [sic] be in the best interests of the child, Obligor or Obligee. [Stacia] testified that during the last year she spent approximately $1,900 per year. [Kelvin] will be paying child support in the amount of $7,934.87 per year which includes the 2% processing charge, which is more than enough to cover the expenses that [Stacia] testified to.

{¶11} In September 2008, Stacia filed objections to the magistrate's decision, arguing that the magistrate did not allow her to present full and complete evidence regarding the parties' and their children's standard of living and that the

magistrate should not have capped the child support at the $150,000 combined income level.

{¶12} In October 2008, the trial court overruled Stacia's objections, finding that "evidence of a lifestyle existing at the time of the original divorce, February 26, 2001, some seven years before would hardly be relevant to lifestyle immediately prior to the hearing conducted on August 19, 2008, and would not be of assistance in determination of the best interests of the minor child, used in setting child support." Additionally, the trial court adopted the magistrate's decision in its entirety.

{¶13} It is from this judgment that Stacia appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial court erred by failing to allow appellant-mother to present full and complete evidence regarding the parties' and their children's standard of living before appellee-father's move to Indiana versus after his move to Indiana.

### Assignment of Error No. II

The trial court abused its discretion by "capping" the child support received by appellant-mother at the $150,000.00 maximum guideline child support level as opposed to calculating support at the actual level of the parties' combined incomes of $220,444.80 and at least extrapolating an order of support based on actual income levels.

### Assignment of Error No. I

{¶14} In her first assignment of error, Stacia argues that the trial court erred by disallowing presentation of full and complete evidence regarding the parties' and their children's standard of living before Kelvin moved to Indiana versus after his move to Indiana. Specifically, Stacia contends that in order to demonstrate McKenzie's particular needs, she should have been permitted to present testimony about the standard of living of the family as a whole, how McKenzie's needs compared to those of the parties' two older children before they became emancipated, and how circumstances had changed in regard to Stacia's expenses. We agree that the trial court erred by disallowing this evidence.

{¶15} Trial courts have broad discretion in determining whether to admit or exclude evidence. *Deskins v. Cunningham*, 3d Dist. No. 14-05-29, 2006-Ohio-2003, ¶53, citing *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83. Accordingly, a trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. Id. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.

{¶16} R.C. 3119.04(B) governs child-support calculations when the combined gross income of the parents exceeds $150,000 per year, providing that:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, *shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents*. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

(Emphasis added). R.C. 3119.04(B) eliminated the former requirement that trial courts extrapolate to determine the appropriate amount of child support when the parents' combined income exceeds $150,000. However, the current statute does not prohibit trial courts from extrapolating, nor does the $150,000 amount constitute a "cap" that trial courts may not exceed. *Cyr v. Cyr*, 8th Dist. No. 84255, 2005-Ohio-504, ¶ 54, 56; *Petersen v. Petersen*, 5th Dist. No. 02COA059, 2003-Ohio-4189, ¶ 22. Instead, R.C. 3119.04(B) "leaves the determination entirely to the court's discretion, unless the court awards less than the amount of child support listed for combined incomes of $150,000." *Cyr*, 2005-Ohio-504, ¶ 54. In determining an appropriate amount of support, the statute directs trial

courts to consider the needs and standard of living of both the "children who are the subject of the child support order and of the parents." R.C. 3119.04(B). Additionally, many courts have found that "[w]hen the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is ' "that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued." ' " *Maguire v. Maguire*, 9th Dist. No. 23581, 2007-Ohio-4531, ¶ 12, quoting *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 24, quoting *Birath v. Birath* (1988), 53 Ohio App.3d 31, 37.

{¶17} In determining appropriate amounts of child support under R.C. 3119.04(B), courts routinely specify that they have considered the expenses of the parents and the standard of living the parents and children enjoyed prior to the separation and divorce, as well as the current standard of living of the parents. See *Barone v. Barone*, 6th Dist. No. L-07-1336, 2008-Ohio-5793; *Bunkers v. Bunkers*, 6th Dist. No. WD-06-030, 2007-Ohio-561; *Kendall v. Kendall*, 6th Dist. No. OT-04-004, 2005-Ohio-1777; *Cho v. Cho*, 7th Dist. No. 03 MA 73, 2003 WL 23018576; *Wolfe v. Wolfe*, 10th Dist. No. 04AP-409, 2005-Ohio-2331.

{¶18} Here, the magistrate refused to allow Stacia to present any testimony about McKenzie's standard of living, permitting only questions about Stacia's specific, recently-incurred, out-of-the-ordinary expenses for McKenzie. Although

these expenses should be considered in determining McKenzie's needs, the statute requires the trial court to consider the needs *and* standard of living of the child. We find that in determining the amount necessary to maintain the standard of living McKenzie would have enjoyed had the parties' marriage continued, evidence regarding the lifestyle the family enjoyed prior to the emancipation of the two older children and Kelvin's move to Indiana was relevant. See *Maguire*, 2007-Ohio-4531. Therefore, Stacia should have been permitted to present testimony about the standard of living enjoyed by Laura and Kalie prior to their emancipation, as this evidence was relevant to determining what standard of living McKenzie expected and would have enjoyed had the parties' marriage continued. Further, the magistrate refused to permit Stacia to present testimony about the standard of living of either parent, as well as the standard of living enjoyed by the family as a whole prior to Kelvin's move to Indiana.

{¶19} While the trial court was not required to award an amount exceeding the child-support guideline for a combined income level of $150,000, the trial court was required to consider McKenzie's needs and standard of living, as well as Kelvin and Stacia's standards of living. The record before us demonstrates that the trial court not only failed to consider this evidence, but also refused to permit Stacia to present such evidence at the hearing. Consequently, we find that the trial court abused its discretion in excluding this evidence.

**{¶20}** Accordingly, we sustain Stacia's first assignment of error.

*Assignment of Error No. II*

**{¶21}** In her second assignment of error, Stacia argues that the trial court abused its discretion by capping the child support received at the $150,000 maximum guideline child-support level instead of calculating support at the actual level of the parties' combined incomes of $220,444.80 and extrapolating an order of support based on that amount.

**{¶22}** Our disposition of Stacia's first assignment of error renders the second assignment of error moot, and we decline to address it. App.R. 12(A)(1)(c).

**{¶23}** Having found error prejudicial to the appellant herein, in the particulars assigned and argued in the first assignment of error, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

PRESTON, P.J., and WILLAMOWSKI, J., concur.

_____