[Cite as *Grilliot-Saddler v. Saddler*, 2018-Ohio-1689.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| MICHELLE R. GRILLIOT-SADDLER, | : | CASE NO. CA2017-09-134 |
| Plaintiff-Appellee, | : | O P I N I O N<br>4/30/2018 |
| | : | |
| -vs- | : | |
| | : | |
| ERIC T. SADDLER, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 08-DR-31732


Michelle R. Grilliot-Saddler, 3134 Running Deer Trail, Franklin, Ohio 45005, plaintiff-appellee, pro se


The Kollin Firm, LLC, Thomas M. Kollin, Suite 270, 3725 Pentagon Boulevard, Suite 270, Beavercreek, OH 45431, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Eric Saddler ("Father"), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, modifying his child support obligation, awarding plaintiff-appellee, Michelle Grilliot-Saddler ("Mother"), the right to claim their daughter as a dependent for income tax purposes, and finding him in contempt

for failing to pay his share of their daughter's healthcare expenses.

{¶ 2} The parties' daughter, Olivia, was born in 2002. Following the parties' divorce in 2008, Mother was designated as the child's residential parent and legal custodian and Father was granted parenting time. The divorce decree ordered Father to pay $1,136 a month in child support, awarded the tax dependency exemption to Mother in odd years and to Father in even years, and ordered that the costs of uninsured medical, dental, orthodontic, vision, and mental-health expenses ("healthcare expenses") be paid 37 percent by Mother and 63 percent by Father. The child support obligation was calculated based upon a combined gross income of $150,000, and not upon the parties' actual combined gross income of $186,675.

{¶ 3} In 2012, the Warren County Child Support Enforcement Agency ("CSEA") conducted an administrative adjustment review of Father's child support obligation. CSEA recommended that Father's monthly child support obligation be reduced to $951 and that Olivia's healthcare expenses be allocated between the parties as follows: 38 percent to Mother and 62 percent to Father. On September 27, 2012, the trial court approved the CSEA's administrative adjustment recommendation and adopted it as an order of the court.

{¶ 4} In 2016, CSEA once again conducted an administrative adjustment review of Father's child support obligation. CSEA recommended that Father's monthly child support obligation be further reduced to $732.67. As in the divorce decree and the trial court's September 2012 entry, the child support obligation was calculated based upon a combined gross income of $150,000, and not based upon the parties' actual combined gross income of $247,097.30.

{¶ 5} Consequently, Mother filed a multi-branch motion to award her the tax dependency exemption every year, to modify the child support obligation, to find Father in contempt for failure to pay his share of Olivia's healthcare expenses, and for attorney fees.

In turn, Father moved to reduce his child support obligation. In 2017, Mother moved the trial court to remove the $150,000 combined gross income cap for child support calculation purposes and to order Father to contribute to the expenses of Olivia. Two months later, Mother filed a contempt motion against Father, alleging Father had not paid his share of Olivia's healthcare expenses for the second, third, and fourth quarters of 2016. The motion further sought attorney fees.

{¶ 6} A hearing on the parties' motions was held in March 2017. Father and Mother both testified. While the majority of their testimony focused on Olivia's healthcare expenses and Father's failure to pay his share of the expenses, the parties also testified, albeit briefly, about their annual income, Olivia's activities, and what each parent pays on behalf of Olivia. Mother testified that she pays for Olivia's various school fees, school trips, and "pay to play" sports and activities, and for most of her clothes, grooming, food, and spending money. Father admitted he does not pay for Olivia's school lunches or cellphone. Mother testified that the cost of Olivia's various activities has increased over the years and that it has impacted their standard of living. Mother explained that lifting the $150,000 combined gross income cap for child support calculation purposes would result in an increased child support obligation which, in turn, would help cover the increased cost of Olivia's activities. Mother noted that while the parties' combined gross income was close to $150,000 at the time of their divorce in 2008, it was now closer to $250,000. Income wise, Father testified that he was "do[ing] pretty well" and that the past couple years have been good years. The record shows that Father is a homeowner and Mother is a tenant.

{¶ 7} On May 11, 2017, the magistrate issued a decision ordering Father to pay $1,280.63 a month in child support, awarding the tax dependency exemption to Mother every year, and ordering that the costs of Olivia's healthcare expenses "be paid 40% by Mother and 60% by Father." Unlike previous calculations, the child support obligation was

not calculated based upon a combined gross income of $150,000. Citing R.C. 3119.04(B), the magistrate found that upon considering "the needs and standard of living of Olivia, as well as Mother and Father[,] removing the $150,000 combined gross income cap on child support is in the best interest of Olivia." The worksheet attached to the magistrate's decision shows that the annual gross income of Father and Mother was $145,262 and $101,000, respectively.

{¶ 8} The magistrate further found Father in contempt for failure to pay his share of Olivia's healthcare expenses in violation of the divorce decree. The magistrate sentenced Father to ten days in jail but provided him the opportunity to purge the contempt charge by "pay[ing] directly to Mother the amount of $1,793.36 representing his portion of Olivia's unreimbursed medical expenses. If Father sent a check on March 24, 2017 in the amount of $1,499.81 as he testified in Court, he need only pay Mother the difference of $293.55 on or before May 15, 2017." The magistrate also ordered Father to pay $1,606.25 for Mother's attorney fees.

{¶ 9} Father filed objections to the magistrate's decision. On August 9, 2017, the trial court recalculated Mother's gross income for child support purposes, subsequently ordered Father to pay $1,278.75 a month in child support, and modified the allocation of Olivia's healthcare expenses between the parties as follows: "43% by Mother, and 57% by Father." The trial court overruled Father's other objections and adopted the magistrate's contempt decision and attorney fees award.

{¶ 10} Father now appeals, raising four assignments of error. The third and fourth assignments of error will be considered together.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ABUSED ITS DISCRETION IN DEVIATING FROM THE $150,000 COMBINED GROSS INCOME CAP.

{¶ 13} Father argues the trial court abused its discretion in not using $150,000 as the parties' combined gross income when it calculated Father's child support obligation. Father asserts "there [was] scant, if any, credible evidence presented to allow the trial court to determine the $150,000.00 combined gross income 'cap' should be removed" pursuant to R.C. 3119.04(B).

{¶ 14} A trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. *Daniel v. Hester*, 12th Dist. Butler No. CA2016-02-037, 2016-Ohio-7543, ¶ 18.

{¶ 15} R.C. 3119.04(B) governs child support calculations when the combined gross income of the parents exceeds $150,000 per year. Specifically, R.C. 3119.04(B) provides that if the combined gross income of both parents is greater than $150,000 per year, the trial court "shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living" of the child and the parents.

{¶ 16} R.C. 3119.04(B) eliminated the former requirement that trial courts extrapolate to determine the appropriate amount of child support when the combined gross income of the parents exceeds $150,000. *Moore v. Moore*, 182 Ohio App.3d 708, 2009-Ohio-2434, ¶ 16 (3d Dist.); *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504 (explaining the extrapolation method). R.C. 3119.04(B) "does not prohibit trial courts from extrapolating, nor does the $150,000 amount constitute a 'cap' that trial courts may not exceed." *Moore* at ¶ 16. Instead, R.C. 3119.04(B) "leaves the determination entirely to the court's discretion, unless the court awards less than the amount of child support [awarded] for combined incomes of $150,000," in which case the trial court is required to make specific findings. *Cyr* at ¶ 53, 54. In exercising its discretion under R.C. 3119.04(B), the trial court is required to consider the needs and standard of living of both the parties' child and the

parties themselves. *Wolf v. Wolf*, 12th Dist. Warren No. CA2008-03-045, 2009-Ohio-1845, ¶ 38.

{¶ 17} The parties' combined gross income is greater than $150,000. The trial court was therefore required to determine the amount of Father's child support obligation by considering the needs and standard of living of Olivia and of the parties themselves. R.C. 3119.04(B); *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2007-02-021, 2007-Ohio-6569, ¶ 13. In calculating Father's child support obligation pursuant to R.C. 3119.04(B), the magistrate specifically noted he had "considered the needs and standard of living of Olivia, as well as Mother and Father in deciding that removing the $150,000 combined gross income cap on child support is in the best interest of Olivia." In overruling Father's objection on this issue and in upholding the magistrate's decision to apply R.C. 3119.04(B), the trial court stated, "The record indicates that child support above the cap is appropriate given the needs and standard of living of the Child (Olivia)."

{¶ 18} As stated above, the parties presented some evidence regarding the needs and standard of living of Olivia and of themselves at the March 2107 hearing. While neither the magistrate nor the trial court made findings in this regard, they were not required to do so as the amount of child support they awarded was not less than the amount of child support awarded for a combined gross income of $150,000. The record plainly reflects that the needs and standard of living of Olivia and the parties were considered in the calculation of Father's child support obligation in compliance with R.C. 3119.04(B).

{¶ 19} We note that Father further asserts that the trial court erred in *deviating* from the $150,000 combined gross income when it ordered him to pay $1,278.75 a month in child support. However, the trial court "had discretion to award any amount above the Guidelines amount for a combined income of $150,000. Any amount awarded above this baseline amount is not considered a deviation. Because there is no Guidelines figure or

extrapolated figure required, there can be no deviation in the award." *Cyr*, 2005-Ohio-504 at ¶ 57.

{¶ 20} In light of the foregoing, we find that the trial court did not abuse its discretion in ordering Father to pay $1,278.75 a month in child support based upon the parties' combined gross income rather than a combined gross income of $150,000.

{¶ 21} Father's first assignment of error is overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING [SIC] APPELLEE ALL TAX EXEMPTIONS FOR ALL YEARS.

{¶ 24} Father argues the trial court abused its discretion in awarding the tax dependency exemption to Mother every year because "there was no credible evidence presented to award [Mother] all future tax exemptions."

{¶ 25} An appellate court reviews a trial court's decision allocating tax exemptions for dependents under an abuse of discretion standard. *Zimmerman v. Zimmerman*, 12th Dist. Butler No. CA2014-06-127, 2015-Ohio-1700, ¶ 68. However, this discretion is both guided and limited by R.C. 3119.82. *Id.*

{¶ 26} Pursuant to R.C. 3119.82, if the parties agree on which parent should claim the child as a dependent, the trial court must designate that parent as the one who may claim the child. However, if the parties do not agree which parent should claim the child as a dependent, the court *may* grant the nonresidential parent the tax dependency exemption, "*only if* the court determines that this furthers the best interest of the [child] and * * * the payments for child support are substantially current as ordered by the court for the year in which the [child] will be claimed as [a] dependent." (Emphasis added.) R.C. 3119.82. In determining the best interest of the child, the court shall consider a number of factors, including: any net tax savings, the relative financial circumstances and needs of the parents

and child, the amount of time the child spends with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the child. *Id.*

{¶ 27} The Internal Revenue Code creates a presumption in favor of awarding the tax exemption to the residential parent. *Zimmerman*, 2015-Ohio-1700 at ¶ 71. If there is a disagreement as to which parent should claim a child as a dependent, the burden is on the nonresidential parent to produce competent and credible evidence to show that allocating the dependency exemption to the nonresidential parent would be in the best interests of the child. *Id.*; *Meassick v. Meassick*, 171 Ohio App. 3d 492, 2006-Ohio-6245, ¶ 15 (7th Dist.).

{¶ 28} Mother was designated as Olivia's residential parent and legal custodian. Therefore, there was a presumption she receive the tax dependency exemption for the child. As the nonresidential parent, Father was required to show that granting him the tax exemption would be in Olivia's best interest. Father failed to do so. Father not only failed to provide any evidence as to many of the factors listed in R.C. 3119.82, including net tax savings, his eligibility for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning Olivia's best interest, he also failed to prove that it would be in Olivia's best interest that he be allocated the tax exemption. *See Burns v. Burns*, 12th Dist. Warren No. CA2011-05-050, 2012-Ohio-2850.

{¶ 29} In overruling Father's objection on this issue, the trial court found that "Father did not present testimony of net taxable savings. Further, Mother makes considerably less money than Father. Mother also is the primary caretaker and is sole residential parent of Olivia. It is therefore equitable that Mother be permitted to claim Olivia for income tax purposes until Olivia is emancipated." The record supports the trial court's finding.

{¶ 30} In light of the foregoing, because Father failed to carry his burden in providing competent and credible evidence that awarding him the tax dependency exemption would

be in the best interest of Olivia, we find that the trial court did not abuse its discretion in awarding the tax exemption to Mother every year. *Burns*, 2012-Ohio-2850; *Hendrickson v. Parrett*, 12th Dist. Butler No. CA2014-01-010, 2014-Ohio-3997.

{¶ 31} Father's second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING APPELLANT IN CONTEMPT FOR FAILURE TO PAY MEDICAL BILLS.

{¶ 34} Assignment of Error No. 4:

{¶ 35} THE TRIAL COURT ERRED IN AWARDING ATTORNEY'S FEES TO APPELLEE.

{¶ 36} Father challenges the trial court's decision finding him in contempt for failure to pay his share of Olivia's healthcare expenses and the court's related award of attorney fees to Mother. Specifically, in his third assignment of error, Father argues that the trial court abused its discretion in finding him in contempt because Mother did not provide him with Olivia's medical bills as required under the divorce decree. In his fourth assignment of error, Father does not challenge the amount or calculation of the attorney fees or the reasonableness of Mother's attorney fees affidavit. Rather, Father simply argues that because he should not have been found in contempt, the trial court erred in ordering him to pay for Mother's attorney fees related to her contempt motions. Mother asserts that both the contempt issue and the attorney fees issue are moot.

{¶ 37} As an initial matter, we note that Father was found to be in civil contempt for failure to pay his share of Olivia's healthcare expenses. Where the sanctions imposed are primarily for reasons benefiting the complainant and are remedial and coercive in nature, the contempt is civil in nature. *Ganaway v. Ganaway*, 12th Dist. Warren No. CA2016-05-039, 2017-Ohio-1009, ¶ 24. "Prison sentences imposed as punishment for civil contempt

- 9 -

are conditional, and the contemnor is said to carry the keys of his prison in his own pocket due to the fact that his compliance with the court order secures his freedom." *Whittington v. Whittington*, 12th Dist. Warren No. CA2011-06-065, 2012-Ohio-1682, ¶ 23. A trial court's finding of civil contempt will not be disturbed on appeal absent an abuse of discretion. *Ganaway* at ¶ 24.

{¶ 38} The record reveals that Father complied with the trial court's purge conditions and purged himself of the contempt charge. On September 13, 2017, the trial court issued the following entry: "This matter came before the Court on September 13, 2017 for final sentencing. * * * The Court received evidence that Mr. Saddler has now paid all sums due as part of his purge requirement. Accordingly, the Court finds that Mr. Saddler has PURGED his contempt finding." Father does not dispute that he has purged himself of the contempt charge.

{¶ 39} An appeal from a finding of contempt becomes moot when the offender either purges himself of the contempt or serves the sentence. *Ganaway*, 2017-Ohio-1009 at ¶ 26; *see also Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254; *Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615. Such a holding stems from the general rule that satisfaction of a judgment strips a party of the right to appeal. *Ganaway* at ¶ 26. Because an appellate court must decide only actual controversies, it may not decide contempt appeals once the contemnor has purged the contempt. *Id.*

{¶ 40} Because Father complied with the trial court's purge conditions, thereby purging himself of the contempt charge, we find that Father's appeal of the trial court's contempt finding and the related award of attorney fees to Mother are moot. Consequently, Father's second and third assignments of error are moot and we need not address the issues on their merits. *Pagliaro v. Pagliaro*, 12th Dist. Clermont No. CA93-02-014, 1993

Ohio App. LEXIS 4074, *6-7 (Aug. 23, 1993).

{¶ 41} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.