[Cite as *Kane v. Kane*, 2026-Ohio-73.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

SHERRY L. KANE,               :

    Appellant,             :

vs.                      :

SCOTT A. KANE,            :

    Appellee.             :

                         :

CASE NO. CA2025-03-020

OPINION AND
JUDGMENT ENTRY
1/12/2026

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 22DR43395

Bradley Frick & Associates, and Christine E. Strehl and Bradley N. Frick, for appellant.

Frost Brown Todd LLP, and Matthew C. Blickensderfer; and Smith Meier & Webb, LPA, and John D. Smith, for appellee.

## **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Appellant, Sherry Kane ("Wife"), appeals from the judgment of the Warren County Court of Common Pleas, Domestic Relations Division, entered following her

divorce from appellee, Scott Kane ("Husband"). Wife presents several arguments related to the award of spousal support, division of marital property, as well as other issues including the filing of income taxes jointly. Finding no merit to Wife's arguments, we affirm.

## I. Factual and Procedural Background

{¶ 2}   Husband and Wife married in 1997. They share two children, and Wife has two additional children from a prior marriage; all are now adults. Husband is the managing partner at a large law firm. Wife, also a licensed attorney, spent most of the marriage as a homemaker, though she has maintained an active law license and was employed through some of that time. Wife was in private practice from 1998 to 2002. She later served as a staff attorney and magistrate in the Juvenile and Probate Divisions of the Warren County Court of Common Pleas from 2010 to 2013. She left the workforce in 2013 to accommodate Husband's career and to care for the children. Although she has not returned to full-time employment since the children reached adulthood, she continues to use her legal training through volunteer work and estate-related matters.

{¶ 3}   Throughout the marriage, the parties enjoyed an affluent lifestyle supported primarily by Husband's income. Wife's last annual salary was $72,000. Husband's compensation included twice-monthly draws, profit distributions, and annual discretionary bonuses. Husband's Schedule K-1 forms show distributions of $611,348 in 2018, $735,289 in 2019, $746,898 in 2020, $1,093,720 in 2021, and $1,189,277 in 2022.

{¶ 4}   The parties separated in November 2021 when Wife moved out of the marital home. They have had little to no meaningful contact since then. On May 25, 2022, Wife filed a complaint for divorce. The trial court subsequently issued a temporary order requiring the parties to maintain their joint accounts with equal access.

{¶ 5}   A final hearing was held before a magistrate in February 2024. Wife testified regarding her financial needs and future earning capacity. She acknowledged being

- 2 -

capable of earning "some income" but stated that it was "never our plan for me to go back to work" and expressed uncertainty about her current earning potential. The parties also addressed other contested issues, including Wife's refusal to sign a joint tax return. Wife claimed uncertainty about Husband's total income and asserted that signing was "not in my interest." Husband denied ever misrepresenting his income and argued that Wife's refusal resulted in thousands of dollars in unnecessary tax liabilities.

{¶ 6} The parties presented evidence concerning the marital residence. Husband's appraisal valued the home at $800,000, while Wife's appraisal set it at $810,000. At trial, Wife testified that she believed the home was worth approximately $1,100,000, citing neighborhood sales, though that testimony was stricken. She later explained that Husband made improvements, including installing an audio-visual system.

{¶ 7} Following the hearing, the magistrate granted the divorce, divided the marital estate equally, and awarded Wife spousal support. The trial court awarded the marital residence to Husband, adopted the Wife's appraisal, and ordered Husband to pay her one-half of the equity. The magistrate also issued orders concerning tax filings, the duration of the marriage, and the valuation of Husband's partnership interest.

{¶ 8} Both parties filed objections—Husband filed one, while Wife filed 26. Before the hearing on objections, Wife subpoenaed PNC Investments, alleging that Husband may have deposited marital income into that account. Husband moved to quash the subpoena, and the trial court granted the motion.

{¶ 9} The trial court later held a hearing on the objections and issued a decision sustaining some and overruling others. Relevant here, the trial court ordered Husband to pay Wife spousal support for eight years beginning April 1, 2024, structured in two tiers.

> **Tier I**: Tier I is based on Husband's monthly draw of $360,000 per year less taxes and Wife's imputed income of $72,000 per year less taxes. Effective April 1, 2024, Husband shall pay

Wife $6,690,000 per month as spousal support from the monthly draw. Husband shall pay this amount directly to Wife in accordance with his pay schedule or via direct deposit, Zelle, Venmo, check or cashier's check.

**Tier II**: Tier II is based on distributions of profit Husband receives above his monthly draw once the firm becomes profitable, and also any annual bonus, which he typically receives in March of the following year. Effective April 1, 2024, after reducing his gross income distributions and bonuses by 47% (to reflect an amount net of federal, state, local, and other taxes), Husband shall pay directly to Wife forty percent (40%) of the net amount of all such distributions and forty percent (40%) of the net amount of all bonuses awarded to Husband. Net does not include deductions for benefits such as health, life, or disability insurance. Husband shall pay Tier II payments to Wife within five (5) days of receiving the distributions or bonuses on which they are based. When making Tier II payments, Husband shall provide Wife with his monthly distribution statement(s) documenting the distributions and bonuses. Husband shall make payment to Wife via direct deposit, Zelle, Venmo, check or cashier's check.

The trial court retained jurisdiction over the amount, but not the duration, of spousal support. It also adopted the magistrate's determination regarding the marital residence, awarding it to Husband and valuing it at $810,000. The court found any increase in value or improvements occurred after the de facto termination date and were paid from Husband's share of income during the case.

{¶ 10} Regarding the tax filings, the court noted it could not compel Wife to file jointly but emphasized its intent to preserve marital funds. It ordered Wife to decide on filing status or share the burden of increased taxes, stating:

> [T]he gist if this ruling is to maximum [sic] the refund that can be split between the parties. Thus, the Magistrate's Decision actually benefits Wife as opposed to creating a burden on her. Still, the Court will not require Wife to file jointly with Husband, for if she does not want to risk the potential of an audit or some other potential problem, that is her choice. But whatever extra tax Husband must pay by filing separately will have to be paid by Wife.

{¶ 11} The trial court then addressed the other contested issues, including the duration of the marriage, Wife's voluntary unemployment, and Husband's partnership interest, before entering a final decree of divorce.[1] Wife now appeals, raising seven assignments of error for review. For clarity, we will address certain assignments of error out of their original order.

## II. Appeal

## A. Spousal Support

{¶ 12} In her first assignment of error, Wife argues the trial court erred in its spousal support determination. A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1). *Kedanis v. Kedanis*, 2012-Ohio-3533, ¶ 8 (12th Dist.). According to R.C. 3105.18(C)(1), "the court shall consider" the statutory factors, such as income of the parties, earning abilities of the parties, ages, duration of marriage, standard of living, education of parties, and assets. *McCarty v. McCarty*, 2017-Ohio-5852, ¶ 17 (12th Dist.). "The trial court need not comment on each factor individually, but rather, 'must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law.'" *Bixler v. Bixler*, 2017-Ohio-7022, ¶ 17 (12th Dist.), quoting *Campbell v. Campbell*, 2009-Ohio-6238, ¶ 22 (12th Dist.).

{¶ 13} A trial court has broad discretion in determining support obligations, which will not be disturbed absent an abuse of discretion. *Kedanis* at ¶ 10; *Grilliot-Saddler v. Saddler*, 2018-Ohio-1689, ¶ 14 (12th Dist.). An abuse of discretion connotes that based upon the totality of the circumstances, the trial court's decision was arbitrary, unreasonable or unconscionable. *Hutchinson v. Hutchinson*, 2010-Ohio-597, ¶ 16 (12th

---

1. We note that Wife's objections were overlapping and confusing in some respects, including some arguments that did not even delineate which findings of the Magistrate were objectionable.

Dist.). The main issue in determining spousal support is the parties' incomes, which are addressed below.

*Imputed Income*

{¶ 14} Wife first contends that the trial court erred in finding her unemployment to be voluntary and in imputing an annual income of $72,000 to her. Voluntary unemployment or underemployment is a relevant factor in determining a party's support obligations. For child support purposes, "income" includes both actual gross income and "potential income" when a parent is voluntarily unemployed or underemployed. *McFarland v. McFarland*, 2019-Ohio-2673, ¶ 12 (12th Dist.); R.C. 3119.01(C)(10)(b). While the spousal support statute does not direct a trial court to impute income for a spouse who is voluntarily unemployed or underemployed, it directs a court to consider the "earning abilities" of the parties. As a result, this court and other courts have approved a trial court's imputation of income for purposes of determining spousal support. *Justice v. Justice*, 2007-Ohio-5186, ¶ 17 (12th Dist.).

{¶ 15} Whether a party is voluntarily unemployed or underemployed is "a factual determination to be made by the trial court based on the circumstances of each particular case." *Rotte v. Rotte*, 2005-Ohio-6269, ¶ 14 (12th Dist.); *McFarland* at ¶ 11. Such determinations will not be reversed on appeal absent an abuse of discretion. *Todd v. Todd*, 2023-Ohio-3677, ¶ 13 (12th Dist.).

{¶ 16} On appeal, Wife argues that the trial court erred in finding that she was voluntarily unemployed and capable of earning $72,000 per year. She contends that her professional experience as an attorney is "virtually non-existent," and that she sacrificed her career to support Husband's. She further asserts her "advanced age" limits her ability to reenter the workforce. Wife also claims the trial court displayed animus toward her for not working and emphasizes that the parties had mutually agreed she would not be

required to work, consistent with their lifestyle throughout the marriage. Although her brief does not clearly state whether any income should be imputed to her, Wife's counsel asserted during oral argument that she has no earning capacity whatsoever—despite previously acknowledging that she believed she had some earning capacity.

{¶ 17} Upon review, we conclude that the trial court did not abuse its discretion in determining that Wife was voluntarily unemployed and in imputing annual income of $72,000. As the trial court observed, Wife holds a law degree, maintains an active license to practice law, has assisted family and friends with legal matters, and is in good health. Notably, in 2010—following an extended break from the workforce—she earned $72,000 annually. Although Wife is now 56 years old and has not worked full-time in several years, the trial court reasonably found that she is intelligent and has meaningful experience, including her prior work as a staff attorney and magistrate in Warren County. While Wife argues that the parties never intended for her to return to the workplace, we have previously recognized that "plans adopted during marriage may not be feasible once the marriage breaks down." *Justice*, 2007-Ohio-5186, at ¶ 10.

{¶ 18} The decision to impute income to Wife was not the product of animus but rather a straightforward acknowledgement that Wife is capable of earning income using skills she has maintained and continued to exercise throughout the marriage—indeed, in an amount she has earned in the past and is capable of earning in the future. Her assertion at oral argument that she is incapable of earning any income strains credulity. Based on this evidence, the trial court acted within its discretion in finding Wife voluntarily unemployed and imputing income of $72,000.

*Tax Implications and Support Date*

{¶ 19} Wife also challenges the spousal support award on additional grounds. She claims the trial court improperly calculated Husband's net income by applying a 47%

reduction to account for tax liability. She further contends that the court erred by setting the effective date of spousal support as April 1, 2024, thereby allegedly excluding Husband's discretionary bonus, which is typically paid in March.

{¶ 20} With respect to the tax liability, we find no abuse of discretion. Wife does not challenge the amount of the Tier I award or the percentage applied to Tier II support. Instead, she challenges only the trial court's determination that Husband's Tier II income should be reduced by 47% to account for tax liability. Wife offers no alternative calculation and assets only that the trial court's finding is unsupported by the record. Husband, by contrast, presented tax documents and testimonial evidence. Husband's evidence indicates that the 47% figure reflected, among other things, a 37% marginal federal tax rate on Tier II income, 2.9% Medicare tax on both sides of the Medicare tax calculation, the additional 0.9% high-earner Medicare tax, a 4% Ohio marginal tax rate, tax liabilities in other states arising from his status as an equity partner, and additional obligation described as "phantom income." Based on our review of the record, we conclude that the trial court reached its decision regarding Husband's tax liability after it considered properly admitted evidence. In doing so, the trial court did not act arbitrarily, unreasonably, or unconscionably, and did not abuse its discretion.

{¶ 21} Wife also argues that the trial court improperly excluded Husband's discretionary bonus by selecting April 1, 2024, as the effective date of spousal support, given that the bonus is typically paid in March. The record reflects, however, that Wife had access to the parties' joint accounts in March 2024 and that there was no evidence establishing whether Husband would receive a bonus in that month or the amount of any such bonus. The trial court was not required to speculate. After reviewing the testimony and evidence, we find the trial court did not abuse its discretion because it considered the totality of the circumstances and the evidence presented to it before reasonably selecting

April 1, 2024, as the effective date of spousal support.

{¶ 22} The trial court did not abuse its discretion in determining the amount of spousal support to award Wife. The trial court reasonably imputed income to Wife after consideration of evidence, including her education, work and life experience, and the income she historically earned. Likewise, the trial court properly considered evidence regarding tax liabilities and the timing of the effective date of spousal support. We overrule this assignment of error.

## B. Duration of Spousal Support

{¶ 23} In her second assignment of error, Wife argues that the trial court abused its discretion by limiting spousal support to eight years. She argues that eight years is an "exceptionally short duration" for a marriage of this length and asserts that precedent from this appellate district supports an indefinite award. At a minimum, she claims the court should have reserved jurisdiction over the duration. Wife again characterizes herself as a "middle-aged homemaker" with limited opportunity to establish a meaningful career and speculates that the trial court's decision reflects disapproval of her lifestyle.

{¶ 24} While this court has, in certain cases, authorized indefinite spousal support for marriages of shorter duration, we have consistently held that both the amount and duration of spousal support depend on the unique facts and circumstances of each case. A trial court's determination will not be disturbed absent an abuse of discretion. *Kedanis*, 2012-Ohio-3533, at ¶ 10; *Folberth v. Folberth*, 2022-Ohio-3384, ¶ 37 (12th Dist.) (noting that marriages of 16 or 17 years have been deemed long-term for purposes of indefinite support). In evaluating whether indefinite support is appropriate, this court considers factors such as the length of the marriage, the parties' ages, and whether the homemaker spouse has realistic employment prospects. *Gillespie v. Gillespie*, 2012-Ohio-51, ¶ 9 (12th Dist.). Indefinite support is generally reserved for cases where the payee spouse

lacks the resources, ability, and potential to become self-supporting. *Id*.

{¶ 25} Here, the trial court concluded that an eight-year term was appropriate after conducting a comprehensive analysis of the statutory factors set forth in R.C. 3105.18. These factors include the parties' income, earning abilities, physical and mental health, retirement benefits, duration of the marriage, standard of living, and education levels. The court also noted that Husband had continued to pay all expenses since the de facto termination date of the marriage.

{¶ 26} Although Wife offers a different interpretation of the evidence, it is the role of the trier of fact to assess credibility and weigh the evidence. *Brickner v. Brickner*, 2009-Ohio-1164, ¶ 12 (12th Dist.). While Wife emphasizes certain factors she believes warrant greater weight, the record reflects that the trial court considered all relevant statutory criteria—including the parties' lifestyle and earning capacities—before determining the duration of support. Based on our review, we find no abuse of discretion. Although the marriage lasted more than 20 years, other factors support a defined term, including Wife's ability to obtain meaningful employment as an attorney, her health and intelligence, and her retention of substantial retirement benefits. The trial court also considered that Wife had equal access to joint accounts and that Husband continued to pay her living expenses and debts since the de facto termination date.

{¶ 27} Because the trial court's decision was neither unreasonable, arbitrary, nor capricious, Wife's second assignment of error is overruled.

### C. Income Taxes

{¶ 28} In her third assignment of error, Wife argues that the trial court abused its discretion by ordering the parties to (1) amend their 2022 tax returns to file as "married filing jointly," and (2) file their 2023 tax returns in the same manner. She contends that this ruling contradicts federal law, forces her to sign a tax return despite legitimate

concerns, and amounts to unconstitutional "compelled speech."

{¶ 29} These arguments, however, misapprehend the trial court's reasoning and the issue before it. The record reflects that Husband attempted to file a joint return for 2022, but Wife refused to sign. As a result, Husband filed separately and incurred more than $31,000 in additional tax liability. The court explained that joint filing would maximize the marital tax refund available for equitable division between the parties.

{¶ 30} Specifically, the trial court found that Wife's refusal to file jointly increased the parties' 2022 tax liability by $31,356. The court therefore ordered the parties to amend the 2022 return to file jointly, assigning responsibility for any resulting tax liability to Husband and awarding him any refund. Wife was ordered to cooperate in the filing. Recognizing, however, that it could not compel Wife to sign a joint return, the court further stated that if Wife refused to cooperate, the increased tax liability would be allocated to her by deducting that amount from Husband's obligation to Wife in the division of a specified capital account.

{¶ 31} With respect to tax year 2023, the trial court similarly ordered the parties to file jointly, again assigning responsibility for any tax owed to Husband and directing that any refund be divided equally. The court further provided that beginning in tax year 2024, the parties would be required to file separately and would each bear their own tax liabilities or retain any refunds.

{¶ 32} Wife acknowledges that Ohio courts have consistently held that trial courts have discretion to order joint filings as part of equitable property division. *Ahmad v. Ahmad*, 2010-Ohio-5635, ¶ 19 (2d Dist.) (collecting cases); *see also Cross v. Cross*, 2015-Ohio-5255, ¶ 21 (8th Dist.) (upholding an order holding a spouse financially responsible for electing to file separately). However, she urges this court to revisit this

"holding."[2] She cites *Leftwich v. Leftwich*, 442 A.2d 139 (D.C. App. 1982), arguing that a spouse cannot be compelled to file jointly. However, no Ohio court has adopted *Leftwich*, and, in fact, that decision recognizes that a trial court may remedy a spouse's refusal to file jointly by adjusting the property distribution. *Leftwich* at 146.

{¶ 33} Wife claims that she declined to file jointly because she "didn't want to be obligated on income [she] was not aware of" and asserts that the order constitutes unconstitutional compelled speech. These arguments lack merit. First, Wife consistently agreed to joint filings during the marriage, and there is no evidence Husband's income sources or reporting practices have changed. Second, as the trial court stated, Wife had full access to financial information through discovery, meetings with the accountant, and draft copies of the 2022 return. She had ample opportunity to verify the accuracy of the return. Finally, the trial court did not force Wife to file jointly; it simply required her to bear the financial consequences of filing separately. This approach does not violate federal law or constitutional principles. The court preserved Wife's choice while preventing her from shifting the resulting financial burden onto Husband. Nothing in federal law or equity prohibits such a remedy.

{¶ 34} For these reasons, Wife's third assignment of error lacks merit and is overruled.

**D. Length of Marriage**

{¶ 35} In her fifth assignment of error, Wife argues the trial court erred in determining the length of the marriage. The trial court concluded that the de facto termination date was May 25, 2022—the date Wife filed her divorce complaint.

{¶ 36} Under R.C. 3105.171(A)(2)(a), the marital property statute presumes that a

---

2. We note that Wife cites *Ahmad* as a case from this appellate district. However, *Ahmad* is a decision from the Second District, and we lack authority to overrule precedent established by that court.

marriage ends on the date of the final divorce hearing. However, this is only a presumption. The statute expressly authorizes a trial court to select a different date if using the final hearing date "would be inequitable." R.C. 3105.171(A)(2)(b). Accordingly, the trial court has discretion to "select dates that it considers equitable in determining marital property." *Waligura v. Waligura*, 2023-Ohio-3747, ¶ 30 (12th Dist.). A trial court's choice of a termination date will not be reversed absent an abuse of discretion. *Porter v. Porter*, 2024-Ohio-1413, ¶ 12 (12th Dist.); *Roberts v. Roberts*, 2013-Ohio-1733, ¶ 28 (12th Dist.).

{¶ 37} Here, the trial court identified several factors supporting its conclusion that the marriage effectively ended by May 25, 2022, including: (1) the parties separated on "less than friendly terms," (2) Wife left the marital residence in November 2021, and the parties maintained separate residences thereafter, (3) the parties made no attempt at reconciliation, and (4) the parties have not lived together, vacationed together, or interacted beyond a few family functions since separation.

{¶ 38} On appeal, Wife argues that the termination date of the marriage should have been later because the parties remained financially entangled through the final hearing, which she claims demonstrated the marriage continued. However, as Husband notes, this entanglement was not voluntary. It resulted from court orders requiring the parties to maintain joint accounts and directing Husband to deposit his income into them. The trial court's determination of the de facto termination date was supported by the evidence and was not an abuse of discretion. Wife's fifth assignment of error is overruled.

**E. Marital Residence**

{¶ 39} In her sixth assignment of error, Wife argues that the trial court erred by awarding the marital residence to Husband. However, she does not contend that she should have retained the property. Rather, she asserts that the home was worth at least

$1,000,000.

{¶ 40} Upon review, we find no merit to Wife's argument. Wife vacated the marital residence, and Husband expressed his desire to retain it. The magistrate determined the home's value, awarded Wife one-half of the equity, ordered Husband to remove Wife from any debt secured by the property, and directed Wife to execute a quitclaim deed transferring her interest to Husband. This outcome adhered to the statutory presumption that marital property should be divided equally unless such division would be inequitable. R.C. 3105.171(C).

{¶ 41} Wife challenges her share of the equity, claiming the trial court's valuation of the property was improper because she believed the home was worth at least $1,000,000. However, a trial court's findings on property valuation and its division of equity will not be reversed absent an abuse of discretion. *Kochaliyev v. Kochaliyeva*, 2025-Ohio-1140, ¶ 24 (12th Dist.); *McNee v. McNee*, 2017-Ohio-7700, ¶ 78 (7th Dist.). Here, the trial court adopted the valuation from Wife's own appraisal ($810,000), which was slightly higher than Husband's appraisal ($800,000). The valuations differed by only $10,000. Wife offers no competent evidence to support her claim of a $1,000,000 value. Her personal belief is not persuasive, particularly in light of the expert appraisals submitted by both parties. Even if evidence of a higher value existed, the trial court acted within its discretion by selecting its valuation of the property. Accordingly, Wife's sixth assignment of error is overruled.[3]

---

3. Wife also argues that the decree improperly requires her to transfer her interest in the residence upon his payment of her share of the equity, rather than conditioning the transfer on Husband's removal of her from indebtedness on the property. However, Wife does not elaborate on this claim or provide any supporting authority. As this court has repeatedly emphasized, the burden of demonstrating error on appeal rests with the asserting party. *Chambers v. Setzer*, 2016-Ohio-3219, ¶ 7 (12th Dist.) "An appellant must present his or her contentions with respect to each assignment of error and the reasons supporting those contentions, including citations to legal authorities and parts of the record upon which the appellant relies." *Id*. This court may disregard an assignment of error if a party fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief. App.R. 12(A);

**F. Husband's Partnership Interest**

{¶ 42} In her seventh assignment of error, Wife argues that the trial court "erred and abused its discretion in failing to divide Husband's partnership interest at Squire Patton Boggs." She requested a "coverture share" of any value attributed to the partnership interest, regardless of whether this interest had any current assigned value or whether that value may be assigned in the future. However, Wife offers only a general statement of divorce law and fails to support her argument with any citation to evidence regarding the value of the partnership interest.

{¶ 43} A coverture share is a formula used in divorce proceedings to divide retirement assets by calculating the marital portion of the asset in order to ensure that the non-earning spouse receives a fair value earned during the marriage. *See generally Randolph v. McCullough,* 2000 Ohio App. LEXIS 4386 (7th Dist. Sept. 21, 2000). But the problem with Wife's argument is that she presented no evidence showing Husband's partnership interest would have any future value akin to the type of retirement asset typically subject to a coverture share.

{¶ 44} Following review, we find Wife's seventh assignment of error to be without merit. According to the testimony of the in-house counsel at Husband's firm, Husband's partnership interest entitles him only to his share of the firm's profits while he remains a partner and, upon departure, the return of his paid-in capital—without interest. The trial court awarded spousal support based on Husband's income (his share of firm profits) and awarded Wife one-half of Husband's net paid-in capital. Beyond that, there is nothing to divide. Wife therefore received a share of everything to which Husband is entitled under his partnership interest. She provides no explanation for why she should receive more or

---

*Stewart v. Vivian*, 2016-Ohio-2892, ¶ 112 (12th Dist.). "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *Chambers* at ¶ 7.

any evidence that additional divisible value exists. As noted above, "[i]t is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *Chambers* at ¶ 7. Wife's seventh assignment of error is overruled.

## G. Quashing of the Subpoena

{¶ 45} In her fourth assignment of error, Wife argues the trial court erred by quashing her subpoena to PNC Investments and by denying the admission of additional evidence.

{¶ 46} The magistrate's decision required the parties to wind down their joint accounts by either closing them or removing the other party's name. Husband asserts that he complied by closing the joint accounts, paying Wife her share of the marital funds, and opening new individual accounts at PNC Bank and PNC Investments. Despite being aware of these actions, Wife later served subpoenas on PNC Bank and PNC Investments seeking information about Husband's individual accounts.

{¶ 47} Husband moved to quash the subpoena. In opposition, Wife argued that she needed additional evidence to support her objections to the magistrate's decision. The trial court rejected this argument and granted the motion to quash, explaining that it did not intend to accept additional evidence after the final hearing.

{¶ 48} Upon review, we find no error in the trial court's decision. In this case, the subpoenas were untimely, coming after nearly two years of litigation and extensive pre-hearing discovery. Furthermore, Wife offered no factual basis for her request beyond mere speculation. *See Humbarger v. Cassidy*, 2024-Ohio-5361, ¶ 19 (12th Dist.) (upholding a trial court's refusal to consider evidence not presented during the final divorce hearing).

{¶ 49} Accordingly, the trial court acted within its discretion in quashing the subpoena and declining to admit additional evidence. Wife's fourth assignment of error is

overruled.

{¶ 50} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Melena S. Siebert, Judge